## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FILED

00 MAR 21  PM 3: 06

CLERK-

**VICTOR RICHARDSON,**

       **Plaintiff,**

vs.

**GARY JOHNSON, Governor of New Mexico,**
**ROBERT J. PERRY, Secretary of Corrections,**
**JOHN SHANKS, Director of Adult Prisons,**
**DONNA WILPOLT, Deputy Corrections Secretary,**
**JERRY TAFOYA, Deputy Corrections Secretary,**
**JEFF SERNA, Interstate Compact Coordinator,**

  **and**

**WACKENHUT CORRECTIONS CORPORATION,**
**ELOY MONDRAGON, Former Warden,**
**MAJOR RALPH LUCERO, Former Director of Security,**
**LT. COSTILLO, and LT. ALONZO GARCIA,**

  **and**

**RONALD ANGELONE, Virginia Corrections Director,**
**STANLEY K. YOUNG, Wallens Ridge State Prison Warden,**
**and PRESENTLY UNNAMED GUARDS AND OFFICERS,**

       **Defendants.**

CIV 00    04 16

Karen B. Molzen

### COMPLAINT FOR VIOLATIONS
### OF CONSTITUTIONAL RIGHTS

Plaintiff Victor Richardson presents the following Complaint seeking declaratory,

compensatory, exemplary, and injunctive relief from Defendants' denials and violations of

his civil and constitutional rights, stating as follows:

1.      Plaintiff is **Victor Richardson**. At the end of August 1999, Plaintiff was a prisoner living in B-Pod, the Honor Unit in Housing Unit One, at the Guadalupe County Correctional Facility, the Wackenhut Corporation prison in Santa Rosa, New Mexico.

2.      Defendants are **Gary Johnson**, New Mexico Governor; **Robert J. Perry**, Secretary of Corrections; **John Shanks**, Acting Deputy Secretary and Director of Adult Prisons; **Donna Wilpolt**, Deputy Secretary; **Jerry Tafoya**, Deputy Secretary; and **Jeff Serna**, the Interstate Compact Coordinator.

3.      Defendants include the **Wackenhut Corrections Corporation** and **Eloy Mondragon,** former Warden of the Guadalupe County Correctional Facility; **Major Ralph Lucero**, former **Lt. Costillo**; and **Lt. Alonzo Garcia**.

4.      Defendant **Ronald Angelone** is the Virginia Corrections Department Director and **Stanley K. Young** is the Warden of Wallens Ridge State Prison. The **Presently Unnamed Guards and Officers** are State of Virginia employees and officials who personally abused and mistreated Plaintiff when he was under their control and custody at Wallens Ridge but whose names are not fully known at this time. The Complaint will be amended when these names are known.

5.      Defendants Gary Johnson, Robert J. Perry, John Shanks, Donna Wilpolt, Jerry Tafoya, Jeff Serna, Eloy Mondragon, Major Ralph Lucero, Lt. Costillo, Lt. Garcia, Ronald Angelone, Stanley K. Young and the unnamed guards and officers are sued in their individual as well as their official capacities. The individually named Defendants, including

2

Governor Johnson and Secretary Perry, as well as the presently unnamed guards and officers, are alleged to have been directly, individually, and personally involved in the acts and omissions described herein or to have held supervisory or policy-making authority and control over those who did directly inflict punishment and pain on Plaintiff. Secretary Perry, Warden Mondragon, Major Lucero, and Stanley K. Young share both direct and supervisory liability.

6.      Jurisdiction of the Federal Court is invoked pursuant to the Court's federal question jurisdiction under 42 USC Sections 1983, 1985, 1986, and the laws and Constitutions of the United States and the State of New Mexico.

### FACTUAL ALLEGATIONS

7.      On September 3, 1999, Defendants transferred Plaintiff and other minimum and medium security prisoners from the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa, New Mexico, to Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia, a Supermax Prison, as punishment for alleged participation in the killing of a guard and a riot at the prison in Santa Rosa on August 31, 1999.

8.      Prior to August 31, Plaintiff was housed in the Honor Unit, B-Pod, and was employed at the prison as the recreation clerk in charge of scheduling.

9.      Victor Richardson did not participate in the killing of the guard or the riot.

10.     Defendants have not charged Plaintiff with any misconduct; they have not given Plaintiff any notice of any charges, and they have not held any hearing.

3

11.     Although the prison was relatively new, by August 1999 the provision of correctional services at the prison in Santa Rosa was far beneath reasonable and adequate standards of correctional management and operations.

12.     Classification and disciplinary systems were not functioning and Defendants were ignoring crucial institutional security issues and threats. The prison was built with serious design and structural flaws. The prison was understaffed and the staff was inexperienced and poorly trained.

13.     By the end of August 1999, following serious incidents of violence at private prisons around the State, Governor Gary Johnson had expressed his concern about the differences between public and private correctional facilities.

14.     According to Governor Johnson and Corrections Secretary Perry, prisoners at private prisons who were involved in violent incidents wanted to be sent back to the State-run prisons, where living conditions were more comfortable than at the private prisons. Governor Johnson announced a new policy of sending such prisoners out-of-state instead.

15.     On Friday, August 27, 1999, the Corrections Department Defendants posted a Notice "in every area where inmates have movement at approximately 2:23 P.M.:"

**ATTENTION:**

**THIS DOCUMENT IS POSTED FOR INFORMATION TO ALL INMATES:**

**ANY FURTHER INCIDENTS OF VIOLENCE WILL RESULT IN TRANSFER OF INMATES TO OUT OF STATE FACILITIES.**

**YOU WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE**

4

**COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.**

**YOUR INSTITUTION WILL BE LOCKED DOWN UNTIL SUCH TIME AS THE AFFECTED INMATE TRANSFERS HAVE OCCURRED.**

**STATE OF NEW MEXICO CORRECTIONS DEPARTMENT**

(EXHIBIT 1).  The inmates correctly perceived this Notice as a threat and a challenge.

16.    The posting of the Notice was done with the knowledge and approval of Governor Johnson, Secretary Perry, and John Shanks.  The Notice was posted as part of a plan and policy of the State of New Mexico and the Department of Corrections to threaten and intimidate prisoners with interstate transfers.

17.    On Monday, August 30, 1999, there was an assault on two inmates in E-Pod at the GCCF. Although prison officials knew who the assailants were, they were not placed in segregation and at least one of the known assailants was apparently involved in the fatal stabbing of Officer Ralph Garcia in E-Pod just a day later, on August 31, 1999.

18.    On the evening of Tuesday, August 31, 1999, a prisoner attacked another prisoner in the Gym and the inmates were ordered to return to their units. That night Plaintiff was not near (and he surely did not participate in) the murder of the guard or the riot that followed.

19.    The next day, September 1, 1999, Corrections Secretary Perry issued a press release promising that "I will have a firm and swift response to this incident."

20.     Early on the morning of Friday, September 3, 1999, Santa Rosa prison guards placed Plaintiff on a bus.  He was chained around the waist, handcuffed, and had shackles placed on his ankles.  Around 3 a.m. a convoy of about 20-vehicles left Santa Rosa for Albuquerque.

21.     Following a wait of several hours in buses on the runway at Kirtland Air Force Base, Plaintiff and the other Santa Rosa prisoners were loaded by federal marshals into an airplane for a three-hour trip.  Upon their arrival at a small Tennessee airport the prisoners were forced to wait for hours without water in hot vans with windows sealed shut.  A Virginia officer removed Plaintiff's partial dental bridge from his mouth and stepped on it.

22.     On September 3, 1999, Corrections Secretary Perry announced:

> . . . . the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia.
>
> . . .
>
> The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia.

Perry also announced that:

> The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely.  While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers armed with 12 gauge combat shotguns.

(EXHIBIT 2).

6

23.    On Plaintiff's information and belief, he states that Defendants Ralph Lucero, Alonzo Garcia, and Lt. Costillo selected Plaintiff for the transfer and Supermax imprisonment in Virginia without regard for whether or not he had participated in violence or rioting at Santa Rosa.

24.    The State of Virginia had recently opened its two new Supermax Prisons, Wallens Ridge and Red Onion. Those prisons were designed and intended to confine, control, and punish the worst and most violent prisoners in the country.

25.    Until they arrived at Wallens Ridge State Prison Plaintiff and the other New Mexico prisoners had no idea where they were being sent.

26.    On the way to the prison the van in which Plaintiff was chained and handcuffed crashed into the van in front of it.  The accident occurred because the driver was looking back to see the chained and handcuffed prisoners being thrown around the back of the van.  Although Plaintiff was injured in the accident, he received no medical attention.

27.    The prisoners were kept in vans near the Wallens Ridge Prison doors for over four hours.  The prisoners were not allowed to speak.  Guards shouted taunts and threats. When they took Plaintiff into the Wallens Ridge Prison he started to tell about the van accident. At that point an officer with an electro-shock gun shocked Plaintiff and told him "Just answer the questions, boy."  Despite his injuries from the van crash, Plaintiff was punched, threatened, and abused by Wallens Ridge officers.

28.    At WRSP Plaintiff was immediately placed and held in a Segregation Unit.

7

29.    At WRSP Defendants kept Plaintiff in a small cell and denied him any meaningful programs or activities, denied opportunity for exercise and recreation, denied any medical, dental, or psychological attention, denied access to books or law library, denied telephone calls and other human contacts.

30.    The Virginia Defendants unreasonably and cruelly humiliated and threatened Plaintiff, and in many respects subjected him to cruel, harsh, and unusual conditions of control and confinement which were far different and more oppressive than any of Plaintiff's prior New Mexico prison experiences.

31.    At Wallens Ridge Plaintiff was subjected to extraordinarily oppressive and degrading measures, including absolute denial of privacy, strict control and limitation of movement, removal of social contact, absence of meaningful activity, extreme forms of punishment and behavioral modification, and continual threats from electroshock weapons, chemical sprays, firearms, shotguns, police dogs and other methods of control and discipline.

32.    During his first 30 days at Wallens Ridge Plaintiff was never allowed out of his cell without first being stripped, searched, shackled, chained, and handcuffed. (EXHIBIT 3). In that time he was only allowed one shower.

33.    Wallens Ridge guards terrorized Plaintiff, including incidents of gratuitous kicking, spitting, and punching him. Officials denied him recreation time, and refused to provide dental treatment, eyeglasses, or treatment of his back injury. (EXHIBIT 4).

8

34.     At the time of his transfer to Wallens Ridge Plaintiff was not a gang member, he was not an escape risk, he had not engaged in any violent activity in or out of prison, and he was not a troublemaker of any sort.

35.     Defendants have not given any reason or explanation for sending Victor Richardson to Wallens Ridge and confining him in the Segregation Unit.

36.     Upon his return to the GCCF at the end of January, 2000, Plaintiff finds many of the same problems at the Santa Rosa prison as before he was shipped to Wallens Ridge. His dental, medical, and psychological needs are being ignored and Plaintiff is presently in serious need of dental treatment and medical attention.

## COUNT 1

## VIOLATIONS OF THE RIGHT TO DUE PROCESS

37.     After the inmate disturbance at Santa Rosa Defendants selected Plaintiff and others for transfer to the prison in Virginia without conducting any investigation, without stating any valid reason or justification, and without holding any hearing.

38.     The Fourteenth Amendment to the United States Constitution and Article II, Section 18, of the New Mexico Constitution provide the right to due process and equal protection of the laws.

39.     Defendants' transfer of Victor Richardson to Virginia in chains and shackles, his placement in segregation in the Segregation Unit of a Super Maximum Security prison

in Virginia, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant hardships and deprivations of Plaintiff's rights and interests.

40.     Defendants' acts and omissions and their treatment of Victor Richardson described herein violate commonly accepted norms of human, social, and official conduct and behavior, and constitute human rights violations which are truly unconscionable and offensive to the concept of ordered liberty.

41.     Despite his conviction and sentence, Plaintiff has a remaining liberty interest which Defendants have denied or seriously compromised by their acts and omissions.

42.     Defendants have exhibited a pattern and practice of use of excessive force and deliberate indifference to (or sanctioning of) that use of force that compounded and exacerbated the initial injustice perpetrated against Plaintiff and constituted additional and continuing violations of Plaintiff's right to procedural and substantive due process of law.

43.     The compelled transfer to Virginia was made secretly, starting in the middle of the night, without any notice and without Plaintiff's prior knowledge.  Defendants kept Plaintiff in chains, shackles, and handcuffs throughout the trip. Defendants' acts compelling Plaintiff's transport to Virginia in chains and shackles, placement in a super maximum confinement prison, and the imposition of cruelly restrictive conditions of confinement constitute atypical and significant deprivations of Plaintiff's rights and interests.

44.     Defendants knew or should have known that Plaintiff was a non-violent person, who had not been involved in the incident at Santa Rosa and who had done nothing to

deserve being sent to a super-maximum security institution, yet they transferred him and forced him to submit to such extreme and oppressive conditions of confinement nonetheless.

45.    Defendants knew or should have known that they were wrongfully punishing Plaintiff for something he didn't do, sending him defenseless into a monstrously oppressive institution with conditions of confinement and inmate management practices far more demeaning and confining than any encountered in any New Mexico prison, even those prisons housing New Mexico's most dangerous and violent criminals.

46.    Defendants' failure to hold a hearing prior to the transfer and their continued failure to re-classify or justify confining Plaintiff as a Maximum Security prisoner throughout his confinement at WRSP constitutes procedural and substantive due process denials which are shocking and offensive to the concept of ordered liberty and justice.

47.    During the time he was at WRSP Plaintiff repeatedly but futilely attempted to invoke the prison grievance process.

48.    Defendants have violated Plaintiff's right to procedural and substantive due process of law and are liable for the damages caused by their violations of Plaintiff's constitutional rights.

## COUNT 2

## VIOLATIONS OF THE RIGHT TO BE FREE
## OF CRUEL AND UNUSUAL PUNISHMENT

49.     The preceding allegations and claims are adopted.

50.     At the time Defendants transferred Plaintiff to WRSP, Plaintiff was a non-violent individual who had no disciplinary infractions or misconduct on his prison record.

51.     By subjecting Plaintiff to the most harsh and extreme conditions of confinement and punishment and by the mistreatment of Plaintiff described herein, Defendants have cruelly and unusually inflicted punishment that goes far beyond the bounds of any acceptable or necessary correctional practice.

52.     The Eighth Amendment to the United States Constitution and Article II, Section 13, of the New Mexico Constitution prohibit the infliction of cruel and unusual punishment.

53.     Defendants knew that Richardson had nothing to do with the killing of the guard or the disturbance that followed. They also knew, and it was clearly foreseeable, that sending a blameless prisoner and other minimum and medium security prisoners like him to a Supermax penitentiary would inflict serious emotional harm and damage.

54.     Defendants have established a practice of using unnecessary and excessive force which is neither justified or excused by any legitimate penological or correctional policies or practices.

55.     The force used against Plaintiff was not motivated by any good faith effort to restore order or maintain the security of the prison. To the contrary, the force used against Plaintiff was arbitrary, vicious, and malicious. It was intended to inflict pain and injury.

56.     Defendants are liable for any and all damages, including but not limited to damages for mental and emotional distress and physical pain and suffering, caused by their infliction of cruel and unusual punishment on Plaintiff.

## COUNT 3

### VIOLATIONS OF THE RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURES

57.     The preceding allegations and claims are adopted.

58.     The Fourth Amendment to the United States Constitution and Article II, Section 10, of the New Mexico Constitution prohibit unreasonable searches and seizures.

59.     Going to and from WRSP and at WRSP, Plaintiff was repeatedly and painfully restrained, shackled, handcuffed, and required to endure long periods of distress and discomfort.

60.     The Virginia Defendants forced Richardson to submit to numerous strip searches, especially while in the Segregation Unit, where prisoners are searched every time they leave their cell. A Wallens Ridge memo details the procedure:

> Any time a strip search is conducted the inmate will be required to strip off all his clothing, turn around slowly, put his hands on his buttocks, spread his buttocks, squat to the ground while buttocks is still spread, and cough hard twice.

13

> This procedure will be followed any time a segregation inmate leaves his cell
> for any reason.  There will be no exceptions to this procedure.

(EXHIBIT 3).

61.     By their policies, procedures, acts, and omissions, Defendants knowingly, deliberately, and unreasonably removed and denied the residuum of privacy and personal rights retained by Victor Richardson following his conviction and sentencing.

62.     The use of searches and seizures to inflict pain on Plaintiff constitutes a violation of the Fourth Amendment's requirement that all searches conducted under color of law must be reasonable as well as the Eighth Amendment prohibition against cruel and unusual punishment.

63.     Both New Mexico and Virginia Corrections Department Defendants are liable for any and all damages resulting from their violations of Plaintiff's fundamental right to be free of unreasonable, unwarranted and unjustified searches and seizures.

## COUNT 4

## VIOLATION OF INTERSTATE COMPACT

64.     The preceding allegations and claims are adopted.

65.     Defendants have entered into an Interstate Compact providing for transfers of prisoners to a different state.

66.     On September 3, 1999, New Mexico Corrections Secretary Robert Perry and Virginia Corrections Director Ron Angelone entered into a Memorandum of Understanding Between the Virginia Department of Corrections and the New Mexico Department of

14

Corrections specifically providing for the transfer of the New Mexico prisoners to Wallens Ridge State Prison.

67.     The Interstate Compact, codified as State law at 31-5-17 NMSA (2000), provides that inmates sent to another state's institutions "shall be treated in a reasonable and humane manner . . . .."

68.     The Compact further provides that confinement in another state "shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state."

69.     Defendants have breached the provisions of the interstate compact by failing to treat Plaintiff and others "in a reasonable and humane manner" and by failing to provide Plaintiff with the same rights he "would have had if confined in an appropriate institution" in New Mexico.

70.     Plaintiff has been damaged as a result of Defendants' breach of the Interstate Compact and Defendants are liable to Plaintiff for damages sustained as a proximate result of their conduct.

## COUNT 5

## DENIAL OF EQUAL PROTECTION OF THE LAW

71.     The preceding allegations and claims are adopted.

72.     By selecting Plaintiff and forcing his transfer to Super Maximum Security confinement in Virginia Defendants acted arbitrarily and unreasonably and violated Plaintiff's right to equal protection of the law.

73.    At WRSP the New Mexico prisoners were segregated in their own section and were treated more harshly and cruelly than groups of prisoners from other states.

74.    By treating Plaintiff and many of the other Santa Rosa prisoners differently from other prisoners in New Mexico and by treating Plaintiff and other New Mexico prisoners differently and more harshly than other prisoners at WRSP, Defendants have denied Plaintiff's right to equal protection and are liable for damages resulting from their violations.

## COUNT 6

## VIOLATIONS OF THE RIGHT TO BE FREE
## OF THE INCIDENTS OF SLAVERY

75.    The preceding allegations and claims are adopted.

76.    As an African-American prisoner, Plaintiff is aware of the history of oppression and slavery of black people in America.

77.    Defendants have involuntarily transferred Plaintiff from his ordinary term of imprisonment in New Mexico, transported him in chains and shackles, without knowledge or explanation and without a hearing to a Super Maximum Security prison in Virginia, and repeatedly and unnecessarily restrained, searched and threatened Plaintiff with injury or death.

78.    Defendants have severely limited Plaintiff's movement, associations, and activities, and have mistreated Plaintiff and subjected him to unusually cruel and unreasonable conditions of confinement.

16

79.    Defendants have physically and mentally controlled and attempted to enslave Plaintiff in a manner that reflects and represents badges and incidents of slavery.

80.    Defendants are liable to Plaintiff for their violations of his rights to be free of the incidents, appearances, and fact of slavery and involuntary servitude which are protected by the Thirteenth Amendment to the United States Constitution.

## COUNT 7

### SUPERVISORY AND MANAGEMENT LIABILITY

81.    The preceding allegations and claims are adopted.

82.    The gratuitous and malicious uses of force and abuses of official powers and due process rights described herein evidence supervisory and management malfeasance and misfeasance of constitutional dimensions.

83.    Defendants Perry, Shanks, Serna, Tafoya, Angelone, and Young knowingly and deliberately failed to monitor, control, or punish the excessive use of force against Plaintiff and the violations of his rights to due process and to be free of unreasonable searches and seizure, and the provision of necessary mental health, medical, and dental care.   In fact, those Defendants encouraged, condoned, and participated in such uses of force and such harsh and excessive conditions of confinement.

84.    Defendants engaged in a pattern and practice of using excessive force and of demonstrating deliberate indifference to the rights and interests of Plaintiff and other New

Mexico prisoners. Defendants are liable for damages resulting from their excessive use of force and their deliberate indifference to Plaintiff's rights.

## COUNT 8

## CONSPIRACY

85.     The preceding allegations and claims are adopted.

86.     Defendants met, conversed, planned, and arranged between and among themselves and with their subordinates to execute the transfer, placement, and punishment of Plaintiff and the other New Mexico prisoners at Wallens Ridge State Prison.

87.     Defendants have acted individually and together with each other and other government officials and employees to plan, cause, and effect the transfer of Plaintiff and other prisoners to Wallens Ridge State Prison knowing that the transfer and placement would inflict extraordinary physical and emotional pain, suffering, and damage.

88.     Plaintiff is entitled to the award of damages and other legal and equitable relief for injuries resulting from Defendants conspiracy and violations of his constitutional rights.

## COUNT 9

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND CLAIM FOR EXEMPLARY AND PUNITIVE DAMAGES

89.     The preceding allegations and claims are adopted.

90.     Defendants' conduct described herein was willful, wanton, deliberate, malicious, and was intended to and did punish and inflict pain and emotional harm upon Victor Richardson for things he did not do.

18

91.     Defendants have acted with deliberate and utter indifference for Richardson's rights; their conduct in this case is shocking and egregious.

92.     Plaintiff is entitled to an award of exemplary and punitive damages to deter and prevent Defendants and others from committing such extreme and offensive acts in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the award of the following relief:

A.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's liberty interests and rights to due process of law, including but not limited to damages for pain and suffering and emotional distress.

B.     Declaratory and compensatory relief for damages resulting from violations of Plaintiff's right to be free of unreasonable searches and seizures and cruel and unusual punishment. Relief from violations of the Thirteenth Amendment to the U.S. Constitution.

C.     Declaratory and compensatory relief for damages resulting from violations of the Interstate Compact and other agreements among the parties.

D.     An Injunctive Order requiring Defendants to provide counseling, therapy, treatment, and care necessary to treat Victor Richardson for the immediate and the long-term effects of his four and a half months at the Super Max prison in Virginia.

E.     Exemplary and punitive damages to discourage and prevent such and similar acts by Defendants and others in the future in the amount of at least One Million Dollars.

19

F.    Costs of this action and reasonable attorneys' fees.

G.    Such other and further equitable and legal relief as the Court deems just,

proper, and necessary.

Respectfully submitted,

Paul Livingston
Attorney for Victor Richardson
P.O. Box 90908
Albuquerque, NM 87199
(505) 823-4410

20

# ATTENTION:

# THIS DOCUMENT IS POSTED FOR INFORMATION TO ALL INMATES:

ANY FURTHER INCIDENTS OF VIOLENCE WILL RESULT IN TRANSFER OF INMATES TO OUT OF STATE FACILITIES.

YOU WILL NOT BE MOVED TO NEW MEXICO PRISONS, BUT WILL BE MOVED BASED ON EMERGENCY TRANSFERS TO INSTITUTIONS VIA THE INTERSTATE COMPACT AGREEMENT AND HOUSED THERE FOR AN INDEFINITE AMOUNT OF TIME.

YOUR INSTITUTION WILL BE LOCKED DOWN UNTIL SUCH TIME AS THE AFFECTED INMATE TRANSFERS HAVE OCCURRED.

STATE OF NEW MEXICO
CORRECTIONS DEPARTMENT

Plaintiff's
**EXHIBIT 1**

FOR IMMEDIATE RELEASE-September 3, 1999

## CORRECTIONS SECRETARY ANNOUNCES INMATE TRANSFER

(Santa Fe)---New Mexico Corrections Secretary Robert J. Perry announced this morning the immediate transfer of approximately 120 inmates incarcerated at the Guadalupe County Correctional Facility in Santa Rosa, to the Wallens Ridge Correctional Facility in Big Stone Gap Virginia. The 120 inmates are the individuals from housing unit one, pods A & E, who participated in Tuesday nights' riot that resulted in the vicious killing of Correctional Officer Ralph Garcia. The inmates were transported early this morning from the U-S Customs Hanger at Kirtland Air Force Base in Albuquerque via a U-S Marshall Transport Jet Plane. The operation is a joint effort of New Mexico Corrections Department, New Mexico State Police and the U-S Marshall Service.

The Wallens Ridge Correctional Facility is a Super Max Level 6 Prison, one of only two in the nation. The 120 inmates from GCCF will remain at Wallens Ridge Correctional Facility indefinitely. While at WRCF the inmates will be locked down for most of the day, programmed in their cells, and under the constant supervision of Correctional Officers, armed with 12 gauge combat shotguns. Secretary Perry said this morning; "They (inmates) will not receive the amenities they have been accustomed to while in prison in New Mexico." He added, "I do not expect a repeat of their past behavior in the Virginia Facility considering these conditions of confinement and supervision."

Several inmates who were participants and witnesses in Tuesday's homicide are being held in a New Mexico Super Max facility for disposition of their case. Secretary Perry said, " I am hopeful these inmates are fully prosecuted to the full extent of the law, which includes a death penalty sentence for their vicious killing of Officer Garcia."

**FOR ADDITIONAL INFORMATION CONTACT THE CORRECTIONS DEPARTMENT AT: PAGER NUMBER 989-5755.**

Plaintiff's
# EXHIBIT 2

**WALLENS RIDGE
STATE PRISON**

# Memo

**To:** INMATE POPULATION

**From:** MAJOR T. YATES

**Date:** 11/12/99

**Re:** STRIP SEARCH PROCEDURE

LATELY THERE HAS BEEN SOME CONFUSION ABOUT THE STRIP SEARCH PROCEDURE HERE AT WALLENS RIDGE STATE PRISON. THIS MEMO WILL CLEAR UP ANY QUESTIONS YOU MAY HAVE ABOUT THIS PROCEDURE.

ANY TIME A STRIP SEARCH IS CONDUCTED THE INMATE WILL BE REQUIRED TO STRIP OFF ALL HIS CLOTHING, TURN AROUND SLOWLY, PUT HIS HANDS ON HIS BUTTOCKS, SPREAD HIS BUTTOCKS, SQUAT TO THE GROUND WHILE BUTTOCKS IS STILL SPREAD, AND COUGH HARD TWICE.

THIS PROCEDURE WILL BE FOLLOWED ANY TIME A SEGREGATION INMATE LEAVES HIS CELL FOR ANY REASON. THERE WILL BE NO EXCEPTIONS TO THIS PROCEDURE.

MAJOR T. YATES

Plaintiff's
**EXHIBIT 3**

● Page 1

# WAL ENS RIDGE STAT PRISON
## REQUEST FOR SERVICES/COMPLAINT FORM
### FOR USE IN C-1 ONLY

2

( ) REQUEST FOR SERVICES/INFORMATION

(✓) COMPLAINT

Place a check mark next to the individual or department to whom you wish to respond to your request/complaint. Forward the form through the institutional mail.

Inmate Name _RICHARDSON VICTOR_____ Number _Z8344_ Cell _C-102___

This request is directed to:

| | | |
|---|---|---|
| ( ) Warden | ( ) A Building Supervisor | (✓) Medical |
| ( ) Assistant Warden of Operations | ( ) B Building Supervisor | ( ) Dentist |
| ( ) Assistant Warden of Programs | ( ) C Building Supervisor | ( ) Psychologist |
| ( ) Chief of Security | ( ) D Building Supervisor | ( ) Laundry Manager |
| ( ) Treatment Program Supervisor | ( ) Personal Property | ( ) Food Services |
| ( ) Institutional Investigator | ( ) Safety Officer | ( ) Records Manager |
| ( ) Disciplinary Hearings Officer | ( ) Institutional Ombudsman | ( ) Business Manager |
| ( ) Mailroom | ( ) Maintenance | |
| ( ) Counselor (name)_____ | | |
| ( ) Other (name)_____ | | |

**RECEIVED** OCT 0 1 1999

Explain the reason for your request/complaint in the space provided. Do not add attachments. **Please Print Clearly. Only one concern or issue per request. Be specific.**

_I'M STILL HAVING PROBLEMS WITH MY BACK, I HAVE BEEN IN PAIN SINCE ARRIVING AT THIS FACILITY, AND HAVENT BEEN ABLE TO SLEEP BECAUSE OF THE PAIN. I WAS IN THE ACCIDENT COMING TO THIS FACILITY. I HAD SEEN THE DOCTER, THE SAME NIGHT BUT WAS UNABLE TO SPEAK WITH HIM CONCERNING THE ACCIDENT, OR MY BACK PROBLEM, SOMETHING HAS TO BE DONE._

_Complaint - 9-17-99_

Inmate Signature _____

## Staff Response

Inmate Interviewed ( ) Yes (✓) No

Action Taken: _Placed on Nursing Sick call_

Staff Signature _E ____ R.__    Date _10-1-99_

**Plaintiff's**
# EXHIBIT 4